

02/20/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| VERNON LEE LAUX and | § | Case No. 05-42982 |
| PAMELA SUE LAUX, | § | |
| | § | |
| Debtors. | § | |
| ——————————————— | § | |
| | § | |
| BUCKEYE RETIREMENT CO., LLC, | § | |
| LTD., | § | |
| | § | Adversary Proceeding No. 05-04181 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| VERNON LEE LAUX and | § | |
| PAMELA SUE LAUX, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

CAME ON TO BE CONSIDERED the COMPLAINT TO OBJECT TO DISCHARGE, AND, IN THE ALTERNATIVE, TO DETERMINE DISCHARGEABILITY OF DEBT (Docket #1) (the "Complaint") in Adversary Proceeding 05-04181.  The Court, having considered the causes of action and issues raised in this adversary proceeding, the arguments of counsel, the evidence presented, and the applicable law, makes the following findings of fact and conclusions of law: [2]

---

[1] These Findings of Fact and Conclusions of Law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such.  To the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

# I. FINDINGS OF FACT

## A. Procedural Background

1.      The Defendants are married to each other and initiated the joint bankruptcy case associated with this adversary proceeding (the "Main Case") by filing for protection under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on June 6, 2005 (the "Petition Date").

2.      On September 2, 2005, the Plaintiff initiated this adversary proceeding by filing the Complaint.  The Plaintiff seeks a judgment denying the Defendants a discharge pursuant to §§727(a)(2),(3),(4),(5), and/or (7) of the Bankruptcy Code.  The Plaintiff, in the alternative, seeks a judgment that the Defendants' debt to the Plaintiff is non-dischargeable pursuant to §§523(a)(2)(A) and/or (B) of the Bankruptcy Code.  The Plaintiff alleges that the Defendants have (1) concealed income and property by filing incomplete and inaccurate Schedules and Statement of Financial Affairs in the Main Case; (2) improperly converted non-exempt property to exempt property within 90 days of the Petition Date; (3) concealed the true value of their personal property in the Schedules filed in the Main Case; (4) have failed to account for the loss or value of various items of personal property; and (5) procured funds from the Plaintiff by intentionally, and with the intent to deceive, making a materially false representation to the Plaintiff.  The Plaintiff also seeks judgment against the Defendants in the amount of $529,380.79 plus attorneys' fees, costs, and interest.

3.      The Defendants filed their Answer to the Complaint on October 20, 2005. The trial of this adversary proceeding took place on December 5, 2006.  At trial, the Court granted the Defendants' motion for a directed verdict as to the §§523(a)(2)(B) and

727(a)(7) causes of action.  The Plaintiff announced to the Court that it was dropping its §523(a)(2)(B) cause of action.  The Plaintiff also conceded that it could not prove an essential element of its §727(a)(7) cause of action.

**B. The Loan**

4.      The Plaintiff is an unsecured creditor of the Defendants.  The Defendants owe the Plaintiff in excess of $529,000.00.

5.      The Defendants' indebtedness to the Plaintiff arises from their written guarantee (the "Guarantee") of a $400,000.00 loan from Bank of America to Circa 2K Gifts, Inc. ("Circa 2K") made in 1999 (the "Loan").[3]  In a December, 1998 Personal Financial Statement provided to the Plaintiff in connection with the application for the Loan (the "Loan Application"), the Defendants stated that they owned "jewelry, silver, artifacts, antiques, stamp and coin collections" with a value of $96,000.00.  The disclosures in the 1998 Personal Financial Statement were true to the best of the Defendants' knowledge when the disclosures were made.  The Defendants' Guarantee does not include any prohibition on the disposition of the Defendants' personal assets.

6.      The Defendants gave their coin and stamp collection (the "Coin and Stamp Collection") to Defendant Pamela Sue Laux's father in 2000 as a birthday gift.  The jewelry listed in the financial statement (the "Jewelry") was stolen on or about September 5, 2000, and a police report was made regarding the theft that same day.  The Jewelry had a value of approximately $40,000.00.

7.      Circa 2K defaulted on the Loan in 2000, and Bank of America foreclosed on its collateral.  Circa 2K turned over the collateral for the Loan to Bank of America.  The Defendants were not subsequently contacted by Bank of America or anyone else

---

[3] The Plaintiff is an assignee of the Loan.  It is unclear when the Loan was assigned to the Plaintiff.

regarding the Loan until 2004.  The Defendants believed that the Loan had been satisfied upon liquidation of the collateral.

8.      In July of 2003, the Defendants signed a Uniform Residential Loan Application to purchase their current residence.  In December of 2003, Defendant Vernon Lee Laux signed an application for a home improvement loan.[4]  Neither of these documents was submitted to Bank of America for the purposes of obtaining a loan.  Bank of America did not rely on these documents in any way when making its Loan four years earlier in 1999 – indeed these documents did not then exist.

**C. General Background**

9.      The Defendants had personal property located in two self-storage units which they emptied in May of 2005.  One of the self-storage units contained items of little or no value, such as displays, boxes, pallets, samples, outdated cards, etc., related to Defendant Pamela Sue Laux's defunct business.  These items were discarded.  The other self-storage unit contained various personal items belonging to Defendant Vernon Lee Laux's parents. These items included scrapbooks, Kodak carousels, used mattresses and children's toys.  The items were placed in the self-storage unit at or near the time Defendant Vernon Lee Laux's mother moved into an assisted living facility.  Thereafter, the items from this storage unit that were of little or no value were discarded.  Some items, such as the children's toys were donated to Frisco Family Services.  The remaining items were relocated to the Defendants' garage and were accounted for in the Defendants' Schedules and Statement of Financial Affairs.  These items were on the

---

[4] The Defendants erroneously omitted their existing guarantee of the Bank of America Loan in the loan applications based on their erroneous assumption that the underlying loan had been satisfied because all of the collateral was turned over to Bank of America, the lender failed to make any collection efforts for four years, nothing showed up on their credit report, and the Small Business Administration may have performed on its guarantee.

Defendants' property at the time the Plaintiff had a professional appraisal done of the Defendants' personal property (the "Post-Petition Appraisal") in connection with the Plaintiff's objection to claimed exemptions in the Main Case.

10.     Defendant Vernon Lee Laux's mother, Betty Jean Laux, died in May of 2006. His mother left a will establishing a trust (the "Betty Jean Laux Trust") consisting of all of her property at the time of her death. The beneficiaries of this trust are her grandchildren (the Defendants' children). Defendant Vernon Lee Laux is named as the trustee. The will was not probated prior to the Petition Date. At the time of her death, Betty Jean Laux owned the real property and the home thereon located at 2720 Cedar Wood, Frisco, Texas 75034 (the "Cedar Wood Property"). Defendant Vernon Lee Laux, as trustee, leased the Cedar Wood Property to a third party after his mother's death and used the rental income to pay the mortgage on the Cedar Wood Property.

11.     Defendant Vernon Lee Laux is a beneficiary of a trust established pursuant to his grandfather's, Vernon Laux, Sr., will (the "Vernon Laux, Sr. Trust"). According to the terms of the will, Defendant Vernon Lee Laux was last entitled to a partial distribution from the Vernon Laux, Sr. Trust at the age of 35 years, which age he reached in 1993. He will not be entitled to any further distribution until he reaches the age of 65 years.

12.     The Defendants insured their personal property through their homeowner's insurance for $434,000.00 on May 17, 2005, and $373,000.00 in September of 2003, which amounts were based on a percentage of the Defendants' real property's value and did not reflect the actual value of the Defendants' personal property at any relevant time. The Defendants did not supply these values to the insurance

5

company, and these values were not the result of an appraisal of the Defendants' personal property.

13.    Defendant Vernon Lee Laux listed his income on a loan application dated July 15, 2003 as $11,761.28 per month.   On or about November 21, 2003, Defendant Vernon Lee Laux signed another loan application in which he stated his monthly income to be $22,000.00 per month, which included his wife's income.   Neither of the prospective lenders was Bank of America.

14.    The Defendants used available funds as well as funds they withdrew from a 401K retirement account to bring their tax escrow and mortgage payments current before filing for bankruptcy protection.

**D. The Defendants' Schedules and Statement of Financial Affairs**

15.    The Defendants filed their original Schedules and Statement of Financial Affairs in the Main Case on June 15, 2006.   The Defendants filed amended Schedules and Statement of Financial Affairs one day prior to the scheduled meeting of the Defendants' creditors held pursuant to §341 of the Bankruptcy Code.   The Defendants amended these Schedules and Statement of Financial affairs on their own initiative and not at the insistence of any creditor or trustee.

16.    The Defendants hired a bankruptcy attorney to file their bankruptcy petition for a flat fee.   The attorney sent the Defendants some forms and worksheets to fill out prior to the Petition Date.   These forms and worksheets were not in the same form as the official forms used for bankruptcy Schedules and Statements of Financial Affairs. The Defendants filled in the information requested in these documents and returned them

to their attorney. The attorney then prepared the Defendants' Schedules and Statement of Financial Affairs based on the completed forms and worksheets.

17.     Shortly after their attorney filed the original Schedules and Statement of Financial Affairs in the Main Case, the Defendants became apprehensive about whether they had disclosed everything that was necessary and sought the advice of two other attorneys. The Defendants took the advice of the second of these attorneys and amended their Schedules and Statement of Financial Affairs to include items that had been erroneously omitted from the original Schedules and Statement of Financial Affairs. The Defendants later substituted counsel pursuant to Court Order dated July 26, 2005.

18.     The Defendants listed a total of $154,634.21 in personal property on their original Schedule B. This was amended to reflect $174,116.76 as the value of their personal property.

19.     The Defendants did not list the Cedar Wood Property on Schedule A of their original or amended Schedules based on their belief that they did not own the property and that Defendant Vernon Lee Laux was merely administering the property as trustee under his mother's will for his children's benefit.

20.     Although later amended, the Defendants did not initially list their common stock interest in Laux Designs, Inc., a defunct and worthless company, on Schedule B of their original Schedules. Their failure to list the common stock was based on their understanding and belief that worthless common stock of a defunct company need not be included in their Schedules.

21.     Although later amended, the Defendants did not initially list their common stock interest in Circa 2K, a defunct and worthless company, on Schedule B of their

original Schedules. Their failure to list the common stock was based on their understanding and belief that worthless common stock of a defunct company need not be included in their Schedules.

22. Although later amended, the Defendants did not identify on Schedule B of their original Schedules two Compass Bank accounts on which each Defendant could co-sign. The first of these accounts had a zero balance and the Defendants initially believed that there was no need to include it in their original Schedules. The second of these accounts was an account in their minor daughter's name with a balance of $89.00 that the Defendants did not initially believe had to be listed in their Schedules.

23. Although later amended, the Defendants did not identify on Schedule B of their original Schedules a First National Bank of Frisco account on which each Defendant could co-sign. This was an account in their minor son's name that the Defendants did not initially believe had to be listed in their Schedules. This account had a balance of $15.17.

24. Although later amended, the Defendants did not initially identify six Fidelity Investment accounts on which each Defendant could co-sign on Schedule B of their original Schedules. Three of these accounts were education investment accounts in the Defendants' minor children's names with zero balances. The fourth of these accounts was an investment account in Defendant Vernon Lee Laux's name. This account also had a zero balance. The Defendants initially believed that it was not necessary to list these zero-balance accounts on their original Schedules. The remaining two investment accounts were in the name of the Debtor's recently deceased mother, Betty Jean Laux.

8

The Defendants did not initially believe that these had to be listed in their Schedules. These accounts had balances of $118.53 and $247.43, respectively.

25.     Although later amended, the Defendants did not initially identify several household goods and furnishings on Schedule B of their original Schedules.

26.     Although later amended, the Defendants did not initially identify the Vernon Laux, Sr. Trust and Betty Lee Laux Trust on Schedule B of their original Schedules.  The Defendants initially believed that because Defendant Vernon Lee Laux was not entitled to a distribution from the Vernon Laux, Sr. Trust until he was 65 years old, and that because Defendant Vernon Lee Laux was only a trustee (not a beneficiary) of the Betty Lee Laux Trust, there was no need to list these on the Schedules or Statement of Financial Affairs.

27.     Although later amended, the Defendants did not identify a 2004 Federal Income Tax Refund of $10,004.00 on Schedule B of their original Schedules.  Although due the Defendants, the 2004 Federal Income Tax Refund of $10,004.00 identified on amended Schedule B was applied to the Defendants' 2003 federal income taxes.  The Defendant did not list the United States Internal Revenue Service as a secured creditor on either their original or amended Schedule D.

28.     Although later amended, the Defendants did not initially identify twenty-one (21) copyrights and trademarks on Schedule B of their original Schedules.  To the extent that any valid copyrights or trademarks existed, the Defendants did not list these items because they believed that the copyrights were expired and worthless.  These copyrights had been obtained in connection with Defendant Pamela Sue Laux's defunct business.

29.     Although later amended, the Defendants did not initially list four life insurance policies with zero value on Schedule B of their original Schedules.

30.     Although later amended, the Defendants did not initially list three savings bonds with zero value on Schedule B of their original Schedules.

31.     Although later amended, the Defendants did not initially identify business inventory and materials on Schedule B of their original Schedules.  This inventory was valued at $125.00.

32.     Although later amended, the Defendants did not initially identify current wages totaling $2,219.10 in the "other personal property" section at the end of their original Schedule B.

33.     Although later amended, the Defendants did not initially list three 401K loans/withdrawals and a monetary gift as "Income other than from employment or operation of business" in their original Statement of Financial Affairs.

34.     The Defendants immediately realized that there were potential omissions from their original Schedules and Statement of Financial Affairs that their first attorney had completed and filed.  The Defendants promptly took action to rectify this situation by consulting with two other attorneys.   After consulting with these attorneys, the Defendants promptly corrected their Schedules and Statement of Financial Affairs.  The Defendants took these actions voluntarily.

35.     To the extent that the Defendants' failure to include any information in their Schedules and Statement of Financial Affairs was in error, it was an honest error corrected by timely amendment.

**E. Factual Findings Related to Specific Elements of §§523(a)(2)(A) and 727(a) Causes of Action**

36.     The Defendants' original and amended Schedules and Statement of Financial Affairs were completed and filed in good faith without the intent to hinder, delay or defraud the Defendants' creditors or to conceal assets from the Defendants' creditors or the Chapter 7 Trustee.

37.     The Defendants did not mutilate, conceal, destroy, transfer, or otherwise dispose of property with the intent to hinder, delay, or defraud any of their creditors within one year of the Petition Date.

38.     The Defendants did not mutilate, conceal, destroy, transfer, or otherwise dispose of property of the estate on or after the Petition Date with the intent to hinder, delay, or defraud any of their creditors.

39.     The Defendants sufficiently and satisfactorily explained any loss of assets or deficiency of assets to meet the Defendant's liabilities.  The Defendants have not been in possession of the Coin and Stamp Collection for six years, and they are not in a position to place a current value on the collection.  Further, the Defendants gave a satisfactory explanation for the disposition of the Coin and Stamp Collection and the Jewelry.  The Coin and Stamp Collection was a birthday gift to Defendant Pamela Sue Laux's father approximately five years prior to the Petition Date.  The Jewelry was stolen in 2000.  The Defendants produced a police report to support this and valued the Jewelry at $40,000.00.

40.     The Defendants satisfactorily explained the whereabouts of the contents of their self-storage units.  The Defendants testified as to the self-storage units' contents and explained that they moved anything of value (with the exception of the donated

11

children's toys) to their house's garage and discarded the rest.  The items moved to the Defendants' garage were accounted for in their Schedules, and the items were present on the Defendants' property when the Post-Petition Appraisal was performed.

41.   The discrepancy between the insured amount of the Defendants' personal property and the claimed value of the personal property was also sufficiently explained. The insured amount was calculated as a percentage of the Defendants' real property value.  The Defendants did not supply the value, and the insured amount was not the result of any appraisal of the Defendants' personal property.

42.   The Defendants have turned over all necessary books and records to the Chapter 7 Trustee in this case.

43.   The Defendants did not misrepresent any material fact to the Plaintiff in the Loan Application or any other document executed or submitted to the Plaintiff in connection therewith.

44.   The evidence presented does not establish that the Defendants improperly converted non-exempt property to exempt property within 90 days of the Petition Date.[5]

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

45.   The Court has jurisdiction to issue a final judgment on the causes of action and issues raised in this adversary proceeding pursuant to 28 U.S.C. §§1334(a) and 157(a), and the United States District Court for the Eastern District of Texas' Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc.  This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(I) and (J).

---

[5] The Plaintiff did not address this point at trial.

**B. Burden of Proof**

46.     The Plaintiff bears the burden of proving the non-dischargeability of a debt under §523 of the Bankruptcy Code by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d. 755 (1991).  The Plaintiff also bears the burden of proof on its objection to discharge under §727 of the Bankruptcy Code by a preponderance of the evidence.  FED. R. BANKR. P. 4005; *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (citing *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 660, 112 L. Ed. 2d. 755 (1991)).  Should an objecting party establish a *prima facie* case supporting its objection to discharge and/or challenge to dischargeability of a debt, the burden shifts to the debtor to prove that its actions (or inactions) are not prohibited by §§523(a) or 727(a).  *See In re Traxler*, 277 B.R. 699, 703 n.4 (Bankr. E.D.Tex. 2002) (in the context of a §727(a) objection to discharge); *see also In re Wang*, 247 B.R. 211, 214 (Bankr. E.D.Tex. 1994) (in the context of a §523(a) challenge to dischargeability).  "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start.  *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).  Without satisfactory proof of each element of a cause of action, judgment is granted for the Defendant.

**C. Section 727(a)(2)**

47.     Section 727 of the Bankruptcy Code provides that the Court must grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for denial of a discharge listed in paragraphs (1) through (10) of §727(a) is proven to exist.  Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment

to creditors by concealing or otherwise disposing of assets.  This provision states in pertinent part:

> [t]he court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed (A) property of the debtor within one year before the date of the filing of the petition; or (B) property of the estate, after the filing of the petition.

11 U.S.C. §727(a)(2).  Therefore, to establish that the Defendants' discharge should be denied pursuant to §727(a)(2)(A), the Plaintiff must prove by a preponderance of the evidence: (i) the existence of a transfer of property, (ii) belonging to the debtor, (iii) within one year of the filing of the petition, (iv) with intent to hinder, delay, or defraud a creditor of the estate.  *See In re Chastant*, 873 F.2d 89, 90 (5th Cir. 1989) (citation omitted).

48.  Intent to defraud must be actual, not constructive.  *Id*. at 91.  Actual intent can be established by circumstantial evidence or by inferences that can be drawn from a course of conduct.  *Id*.  The Fifth Circuit has identified the following factors that may provide evidence of actual intent to defraud: (i) a lack or inadequacy of consideration, (ii) a familial or close relationship between the parties, (iii) retention of possession, benefit, or use of the property in question, (iv) the financial condition of the party sought to be charged both before and after the transaction in question, (v) the existence or cumulative effect of a pattern or course of conduct after the incurring of a debt, onset of financial difficulties or threat of suits by creditors, and (vi) the general chronology of the events and transactions at issue.  *Id*.

14

49.     Here the Defendants did not act with the intent to hinder, delay or defraud any of their creditors.  Judgment will, therefore, be granted in favor of the Defendants on the §727(a)(2) cause of action.

**D. Section 727(a)(3)**

50.     Section 727(a)(3) of the Bankruptcy Code requires debtors to maintain records in order to obtain a discharge in bankruptcy.  *See, e.g., In re Esposito*, 44 B.R. 817, 826 (Bankr. S.D.N.Y. 1984).  Section 727(a)(3) specifically provides that:

> The court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. §727(a)(3).  Therefore, the Plaintiff must establish by a preponderance of the evidence *either* that the Defendants failed to keep or preserve recorded information, including books, documents, records and papers, *or* that the Defendants engaged in an act of destruction, mutilation, falsification or concealment of such recorded information.  If the Plaintiff's burden is satisfied, the burden of proof shifts to the Defendants to prove that the inadequacy in keeping or maintaining records is justified under the circumstances of this case.  *See In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003) (debtor's explanation for inadequate books and records must be satisfactory).

51.     An individual debtor "is not required to keep an immaculate set of books and records of his personal financial transactions."  *Id.*  The true inquiry for the Court is whether the level of recordkeeping employed by a particular debtor is appropriate given

the nature of his or her particular circumstances.[6]   ". . . [J]ustification for a bankrupt's

failure to keep or preserve books or records will depend on the extent and nature of his

transactions and whether others in like circumstances would ordinarily keep them." *In re

Russo*, 3 B.R. 28, 34 (Bankr. E.D.N.Y. 1980).   The Defendants, as individuals, are not

generally under a duty to keep more detailed records than any other individual taxpayers.

*See In re Rowe*, 81 B.R. 653, 657 (Bankr. M.D.Fla. 1987) (holding that debtor's checking

account statements were sufficient for ascertainment of his financial condition).

52.   The Plaintiff bases this cause of action on the fact that the Defendants did

not keep an inventory of their self-storage units' contents.   The Defendants kept various

personal effects, most of which had little or no value, in their self-storage units.   The

Defendants retained any items from the units that they thought had value and either

discarded or donated the rest.

53.   Under the circumstances, it is unreasonable to require the Defendants in

this case to keep an inventory of the items they placed into or removed from their private

self-storage units in order to receive a discharge.   It is unlikely that very many people in

like circumstances would keep such an inventory.   The Court is unaware of, and the

Plaintiff has not directed the Court to any authority stating that an individual taxpayer

must keep an inventory of items in a personal self-storage unit or that the failure to keep

an inventory of items in a personal self-storage unit is a basis for denying an individual a

---

[6]   In *In the Matter of Bartolotta,* 485 F.2d 227 (5th Cir. 1973), the Fifth Circuit held that a referee erred in denying a debtor's discharge based upon a failure to keep books and records in the seasonal Christmas tree vending business, because the lower court should have heard evidence of any special circumstances relevant to that particular debtor and his case.   In *Texas National Bank of Beaumont v. Edson*, 100 F.2d 789 (5th Cir. 1939), the appellee debtor testified that at no time did he ever undertake to keep a set of books on his business operations.   *Id.* at 790.   The Fifth Circuit ruled that the grant of the discharge was dependent upon a finding that failure to keep books and records was justified under all of the circumstances of the case.

discharge. Accordingly, the Court grants judgment in favor of the Defendants on the §727(a)(3) cause of action.

**E. Section 727(a)(4)**

54.     Section 727(a)(4) of the Bankruptcy Code provides that the debtor's discharge should be denied if the debtor, knowingly and fraudulently, in or in connection with the case, (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money property or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under the Bankruptcy Code, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.  11 U.S.C. §727(a)(4).  Sections 727(a)(4)(B) and (C) are clearly not applicable here.  The Defendants have also turned over all necessary recorded information to the Chapter 7 Trustee in this case.  Therefore, the only remaining subsection at issue is §727(a)(4)(A).

55.     Section 727(a)(4)(A) provides that the debtor's discharge should be denied if the debtor, knowingly and fraudulently, in or in connection with the case, made a false oath or account.  11 U.S.C. §727(a)(4)(A).  The purpose of this section is to encourage debtors to deal honestly with their creditors by making full and complete disclosure.  "The debtor must be scrupulous in giving notice of all assets to which others may make a legitimate claim . . . ."  *In re Sullivan*, 204 B.R. 919, 942 (Bankr. N.D. Tex. 1997) (citing *In re Braymer,* 126 B.R. 499, 502 (Bankr. N.D. Tex. 1991)).  False oaths sufficient to justify the denial of discharge include "(1) a false statement or omission in the debtor's

17

schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." *In re Beaubouef*, 966 F.2d at 178 (citation omitted).

56.    "In a §727(a)(4)(A) case, the court may consider a correction in the schedules, and an explanation of such correction by the debtor, when deciding whether the debtor made a bona fide effort to value his assets when preparing the original schedules." *In re Parnes*, 200 B.R. 710, 714 (Bankr. N.D.Ga. 1996) (citing *In re Wines*, 997 B.R. 852, 857 (11th Cir. 1993)). "However, an amendment including omitted assets in response to a creditor's objections will support a finding that the assets were deliberately omitted." *Id.* (citing *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991)).

57.    In order to prevail under §727(a)(4)(A), the Plaintiff must prove, by a preponderance of the evidence, that (i) the statements were made under oath, (ii) the statements were false, (iii) the Defendants knew the statements were false when made, (iv) the Defendants made the statements with fraudulent intent, and (v) the statements relate materially to the bankruptcy case. *In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001) (citation omitted). The Plaintiff has proven that the Debtors were under oath when they completed their original Schedules and Statement of Financial Affairs. The Plaintiff satisfied the second element by proving that the original Schedules were incorrect due to certain omissions.[7]

58.    The Plaintiff also satisfied the materiality requirement. The Fifth Circuit has stated that lack of value to the bankruptcy estate is not an excuse for a debtor omitting items that are worthless to the bankruptcy estate from the debtor's schedules. *In re Beaubouef*, 966 F.2d at 178. "In determining whether or not an omission is material,

---

[7] The Court notes that the Defendants did amend their Schedules and Statement of Financial Affairs to include not only the omitted items that are required to be listed, but also to include items that arguably did not have to be listed, such as the Betty Jean Laux Trust and the Defendants' children's financial accounts.

the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Id.* (citing 4 *Collier on Bankruptcy,* ¶ 727.04[1], at 727-59). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* (citing *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)).  "Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules 'serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true.'"  *Id.* at 179 (quoting *In re Urban*, 130 B.R. 340, 344 (Bankr. M.D.Fla. 1991)).  Because the information in the Defendants' Schedules and Statement of Financial Affairs is essential to the bankruptcy process and bears a relationship to the Defendants' bankruptcy estate, many of the omissions from the Defendants' original Schedules and Statement of Financial Affairs were material for the purpose of determining a denial of discharge under §727(a)(4)(A).[8]

59.    The Plaintiff did not, however, prove the third and fourth elements necessary for their §727(a)(4)(A) cause of action.  The Defendants did not know the Schedules and Statement of Financial Affairs were incorrect when they were initially filed.   They were not aware of the *Beaubouef* decision and did not understand "materiality" in the context of the Fifth Circuit's opinion.  Indeed, the Debtors had

---

[8] While it appears that omissions of items such as the Betty Jean Laux Trust and the Defendants' children's financial accounts may not be material because these items were likely not property of the Defendants' bankruptcy estate, the Court need not decide whether these items were property of the Defendants' bankruptcy estate in light of the Court's resolution of the third and fourth elements of this cause of action.

questioned their original counsel about the necessary disclosures and acted on advice of that counsel.  The Debtors did not stop there – they sought a second opinion because they were not completely satisfied with the advice they received and were concerned that additional disclosures were required.  After receiving advice from another attorney, the Debtors promptly amended their disclosures.  The Defendants exercised diligence by taking prompt steps, voluntarily and prior to their scheduled §341 meeting of creditors, to correct the omissions.  Courts generally do not deny a debtor a discharge where the debtor voluntarily amends schedules and/or statements of financial affairs prior to the §341 meeting of creditors.  *See In re Guttman*, 237 B.R. 643, 648 (Bankr. E.D.Mich. 1999) (citing *Gillickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997); *Baker v. Mereshian (In re Mereshian)*, 200 B.R. 342, 346 (9th Cir. BAP 1996); *Williamson Constr., Inc. v. Ross (In re Ross)*, 217 B.R. 319, 324 (Bankr. M.D.Fla. 1998)).[9]

60.    The Defendants did not have any fraudulent intent in completing their Schedules and Statement of Financial Affairs.  The Defendants did not knowingly and fraudulently make a false oath or account in or in connection with their bankruptcy case.  Many omitted items were of little or no value to the Defendants' bankruptcy estate and/or were exempted from property of the Defendants' bankruptcy estate.  Moreover, Debtors intended to make the appropriate disclosures and relied on advice of counsel.  In addition,

---

[9] Although there are many published cases where debtors were denied a discharge despite corrective amendments to schedules and/or statements of financial affairs, the debtors in those cases only amended their schedules and/or statements of financial affairs after material omissions were discovered by another party such as a trustee, examiner or objecting creditor and did not amend their schedules voluntarily and on their own initiative.  *See, e.g., In re Schnabeld*, 61 F.Supp. 386 (D.Minn. 1945); *In re Matus*, 303 B.R. 660 (Bankr. N.D.Ga. 2004); *In re Gannon*, 173 B.R. 313 (Bankr. S.D.N.Y. 1994); *In re Smith*, 161 B.R. 989 (Bankr. E.D.Ark. 1993); *In re Klein*, 114 B.R. 778 (Bankr. M.D.Fla. 1990); *In re Muscatell*, 113 B.R. 72 (Bankr. M.D.Fla. 1990); *In re Trauger*, 101 B.R. 378 (Bankr. S.D.Fla. 1989); *In re Garcia*, 88 B.R. 695 (Bankr. E.D.Pa. 1988); *In re Hussan*, 56 B.R. 288 (Bankr. E.D.Mich. 1985); *In re Cline*, 48 B.R. 581 (Bankr. E.D.Tenn. 1985).

whether the Defendants were required to list Mr. Laux's status as a trustee of the Betty Jean Laux Trust and their children's financial accounts in their Schedules is questionable. Their prompt and voluntary actions to correct the omissions evidence their good faith. The items omitted from the Defendants' Schedules and Statement of Financial Affairs were honest oversights based in part on the advice of their former counsel that were corrected by timely and voluntary amendment.  S*ee In re Beaubouef*, 966 F.2d at 178 (…[A] discharge cannot be denied when items are omitted from the schedules by honest mistake).

61.    The Defendants' good faith and honesty is further evident from (i) their conduct in turning over all necessary recorded information to the Chapter 7 Trustee and (ii) the lack of any nefarious purpose in the initial failure to disclose.  The Court, therefore, grants judgment in favor of the Defendants on the §727(a)(4) cause of action.

**F. Section 727(a)(5)**

62.    Section 727(a)(5) of the Bankruptcy Code states that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. §727(a)(5).  The initial burden of going forward with evidence is on the objector, who must introduce more than merely an allegation that the debtor has failed to explain losses.  Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened.  *In re Reed*, 700 F.2d 986, 992-993 (5th Cir. 1983).

63.     A "satisfactory explanation" has not been conclusively defined, but the debtor must explain the losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct.  A satisfactory explanation "must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir. 1966).

64.     Here, the Plaintiff relies upon the fact that the Defendants gifted the Coin and Stamp Collection to Defendant Pamela Sue Laux's father in 2000 without being able to provide a value for the collection.  The Plaintiff also relies on the argument that the Defendants emptied two self-storage units and did not account for the disposition of their contents.  The Plaintiff further argues that the Defendants did not account for the whereabouts of the Jewelry.  Finally, the Plaintiff relies on the fact that the amount of insurance taken out for the Defendants' personal property was greatly in excess of the claimed value of that property.

65.     The Defendants have not been in possession of the Coin and Stamp Collection since 2000, and they are not in a position to place a current value on the collection.  Further, the Defendants gave a satisfactory explanation for the disposition of the collection – it was a birthday gift to Defendant Pamela Sue Laux's father approximately five years prior to the Petition Date.

66.     The Defendants explained the whereabouts of the contents of the self-storage units.  The Defendants testified as to the self-storage units' contents and explained that they moved anything of value to their garage and discarded the rest (with the exception of the donated children's toys).  The items moved to the Defendants'

garage were accounted for in their Schedules, and the items were present on the Defendants' property when the Post-Petition Appraisal was performed.

67.    The Defendants have satisfactorily explained the whereabouts of the Jewelry.  The Defendants explained that it was stolen and produced a police report to support this.  The Defendants provided a value of $40,000.00 for the Jewelry.

68.    The discrepancy between the insured amount of the Defendants' personal property and the claimed value of the personal property was also sufficiently explained. The insured amount was calculated as a percentage of the Defendants' real property value.  The Defendants did not supply the value for the insurance, and the insured amount was not the result of any appraisal of the Defendants' personal property.

69.    Because the Defendants have satisfactorily explained any loss of assets or deficiency of assets to meet the debtor's liabilities, the Court grants judgment in favor of the Defendants on the §727(a)(5) cause of action.

**G. Section 523(a)(2)(A)**

70.    Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge debts accrued

> for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A).

71.    As an initial matter, because the statement at issue in this case is a written statement respecting the Defendants' financial condition,[10] the Plaintiff may pursue a non-dischargeability action pursuant to §523(a)(2)(B) but not pursuant to §523(a)(2)(A).

---

[10] *See Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060, 1060-61 (4th Cir. 1984)

23

Inasmuch as the Plaintiff declined to prosecute a non-dischargeability cause of action under subsection (B) of §523(a)(2) at trial, the Plaintiff cannot pursue a claim that the Debtor's obligation to the Plaintiff is not dischargeable due to a false representation related to the debtor's financial condition.  This is particularly true given that the Plaintiff has failed to prove that the information the Defendants provided was false when made.

72.    Although other circuits have applied a uniform standard to all §523(a)(2)(A) actions, the Fifth Circuit has distinguished the elements of "actual fraud" on the one hand and "false pretenses and false representations" on the other. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).  To prove that a debt is non-dischargeable as having been obtained by false pretense or representation, a creditor must establish (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, and (iii) that was relied upon by the creditor.  *See Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992); *RecoverEdge L.P.*, 44 F.3d at 1292-93.  "'False pretenses' and 'false representations' both involve intentional conduct intended to create and foster a false impression."  *Still v. Patten (In re Patten)*, 225 B.R. 211, 215 (Bankr. D. Ore. 1998) (citation omitted).  "The distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement."  *Id.* (citations omitted).  Actual fraud requires the additional proof of the debtor's intent to deceive and a loss by the creditor which is proximately caused by the fraud.  *RecoverEdge L.P.*, 44 F.3d at 1293.

73.    The Plaintiff failed to prove any of the three necessary elements to support its §523(a)(2)(A) cause of action.  First, the Plaintiff failed to prove "the existence of a

knowing and fraudulent falsehood." *In re Allison*, 960 F.2d at 483. The Plaintiff argues that the Defendants' inclusion of the Coin and Stamp Collection in the personal property listed in the 1998 Personal Financial Statement submitted to Bank of America was an intentional misrepresentation within the scope of §523(a)(2)(A) because the Defendants gave away the Coin and Stamp Collection in 2000 and could not provide an exact value for the Coin and Stamp Collection at trial.

74.    The Coin and Stamp Collection was one of several items for which the Defendants estimated an aggregate value in their 1998 Personal Financial Statement. The Plaintiff has not presented any evidence that the value placed on the Coin and Stamp Collection was false.

75.    The Plaintiff also failed to prove that there was any misrepresentation of "past or current events." *Id*. There was never a covenant in the Defendants' Loan Guarantee prohibiting transfer of any of their personal property, and the Defendants never made any representation that any personalty would not be transferred. The fact that the Defendants' balance sheet looks different today than it did eight years ago does not mean that the Defendants' representations in the 1998 Personal Financial Statement were false when they were made. *See In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) (A misrepresentation for purposes of §523(a)(2)(A) must be a representation of past or current facts.).

76.    There was no "knowing or fraudulent falsehood" in this case, so the Plaintiff obviously is not able to prove that it relied on any such falsehood (the third element necessary for the Plaintiff's §523(a)(2)(A) cause of action). Because the Plaintiff failed to show that the Debtors made any false or fraudulent representation to the

Plaintiff, the Court grants judgment in favor of the Defendants on the Plaintiff's §523(a)(2)(A) cause of action.

## IV. CONCLUSION

The Plaintiff did not prove by a preponderance of the evidence that it is entitled to judgment on any of its causes of action in this adversary proceeding. A separate judgment in favor of the Defendants will be entered consistent with these findings of fact and conclusions of law.

Signed on 2/20/2007

*Brenda T. Rhoades*   SD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE